IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AYODELE OKE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL WENEROWICZ, | : | NO. 15-cv-61 |
| et al. | : | |

ORDER

AND NOW, this 4th day of February 2016, upon careful and independent consideration

of Petitioner Ayodele Oke's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc.

No. 1), Respondents' response in opposition to the petition (Doc. No. 13), Petitioner's numerous

pending motions (Doc. Nos. 11, 21, 22, 29, 30, 41, 42 & 43), the Report and Recommendation of

United States Magistrate Judge M. Faith Angell (Doc. No. 34), Petitioner's objections to the

Report and Recommendation (Doc. No. 39), and the record before the Court, it is hereby

ORDERED as follows:

1. The Report and Recommendation (Doc. No. 34) is APPROVED and ADOPTED as modified by this order.

2. The petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) is DISMISSED without an evidentiary hearing.

3. Petitioner's objections to the Report and Recommendation (Doc. No. 39) are OVERRULED in part.

4. Petitioner's motion to amend the original petition (Doc. No. 11) is DENIED.

5. Petitioner's motions for sanctions (Doc. Nos. 21 & 22) are DENIED.

6. Petitioner's motion for discovery and an evidentiary hearing (Doc. No. 29) is DENIED.

7. Petitioner's motion for judicial notice (Doc. No. 30) is GRANTED in part and DENIED in part.

8. Petitioner's motion to supplement the original petition or his objections to the Report and Recommendation (Doc. No. 42) is DENIED.

9. Petitioner's "motion to grant" the petitioner's motion to supplement the petition for writ of habeas corpus or his objections to the Report and Recommendation (Doc. No. 43) is DENIED.

10. Petitioner's request for a certificate of appealability (Doc. No. 41) is DENIED.

11. The Clerk of Court is directed to close this matter for statistical purposes.

I.  Background

The factual and procedural background of this matter is set forth Magistrate Judge M. Faith Angell's Report and Recommendation.  The Court does not repeat it here, except where it is relevant to the analysis.

Petitioner raises six claims for habeas relief.  He argues as follows: (1) the prosecution used a peremptory strike in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79 (1986); (2) the prosecution presented false testimony at trial and withheld evidence; (3) the trial judge should have recused himself and Petitioner was denied the right to an impartial trial judge; (4) the trial court lacked subject-matter jurisdiction; (5) Petitioner was denied the right to an impartial jury because the trial court and counsel pressured the victim into testifying against Petitioner at trial; and (6) Petitioner's sentence was enhanced in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013), because the trial judge rather than the jury found Petitioner used a deadly weapon.  (Mem. Law & Fact Supp. Pet. for Writ of Habeas Corpus 11, 42, 74, 89, 99, 105, Doc. No. 1.)  Petitioner also requests an evidentiary hearing with respect to several of his claims.  (Mem. Supp. Pet. 73, 88, 104; Pet'r's Mot. for Disc. & Evidentiary Hr'g 1, Doc. No. 29.)

2

In her Report and Recommendation, Magistrate Judge Angell recommended that the Court deny the habeas petition without an evidentiary hearing.  (R. & R. 2. [1])  Petitioner objected to the Report and Recommendation on numerous grounds.  (See Pet'r's Objs. to Magistrate J. M. Faith Angell's R. & R., Doc. No. 39.)  He subsequently filed three additional motions, in which he requested a certificate of appealability (Pet'r's Req. for Certificate of Appealability, Doc. No. 41), asked to supplement his petition or his objections with additional arguments (Mot. to Suppl. Pet. for Writ of Habeas Corpus &/or Pet'r's Objs., Doc. No. 42), and requested that this Court grant his "motion to supplement" as uncontested (Pet'r's Mot. to Grant Pet'r's Mot. to Suppl., Doc. No. 43).  Petitioner had also previously filed several other motions, including a motion to amend his petition (Pet'r's Mot. to Amend Original Pet. for Writ of Habeas Corpus, Doc. No. 11), two motions for sanctions (though both motions appear largely the same in substance) (Pet'r's Mot. for Sanctions, Doc. No. 21; Pet'r's Mot. for Sanctions, Doc. No. 22), a motion for discovery and an evidentiary hearing (Pet'r's Mot. for Disc. & Evidentiary Hr'g, Doc. No. 29), and a motion for judicial notice (Mot. for Judicial Notice, Doc. No. 30).  The Court now reviews the petition, the Report and Recommendation, and the numerous outstanding motions.

II.  Governing Legal Standards

   A.  AEDPA and the Habeas Petition

Petitioner's application for federal habeas review of his state conviction is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  The scope of federal review of a habeas petition is limited both by principles of federalism and by AEDPA's deferential standard of review.  At a minimum, federalism and comity require that a state court have a chance to rule on

---

[1] The Court notes that all citations to the Report and Recommendation follow the pagination listed on the report itself, though the numbering in the document erroneously begins from two rather than from one.

a petitioner's claims before a federal court steps in.  See Coleman v. Thompson, 501 U.S. 722, 730–31 (1991).

The claims must be "fairly presented" to the state court; in other words, the "factual and legal substance" of the claims must have been raised before "the state courts in a manner that puts them on notice that a federal claim is being asserted."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  Exhaustion requires that a petitioner litigate his claims through "one complete round of the State's established appellate review process," including a petition for discretionary review with the state's highest court.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  If any claim in a habeas petition is unexhausted, the federal court must either dismiss the petition or stay it until the state court has had a chance to rule on the claim.  See Rhines v. Weber, 544 U.S. 269, 277 (2005).

If a petitioner has not fully presented a claim to the state courts but a state procedural rule now prevents him or her from doing so, exhaustion is excused on the basis of futility; however, the claim is deemed procedurally defaulted.  See Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001).  In Pennsylvania, a claim is procedurally defaulted if "the state court refuses to hear the merits of the claim because either (1) the defendant waived a [Post-Conviction Relief Act ("PCRA")] claim she could have raised in an earlier proceeding but failed to do so; or (2) some other procedural bar exists, such as a statute of limitations."  Lambert v. Blackwell, 134 F.3d 506, 518 (3d Cir. 1997).  A claim that is procedurally defaulted may not be considered on the merits by a federal court unless the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice."  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  "To demonstrate cause for a procedural default, a petitioner must show that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'  To

4

demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show 'that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Tribuani v. Phelps, 820 F. Supp. 2d 588, 592 (D. Del. 2011) (citation omitted) (quoting Murray v. Carrier, 477 U.S. 478, 488, 494 (1986)). Ordinary attorney error or inadvertence is insufficient. See Murray, 477 U.S. at 488. A fundamental miscarriage of justice will only be found "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 496.

Additionally, AEDPA provides a one-year statute of limitations beyond which a petition for habeas corpus is deemed untimely and may not be considered on the merits by a federal court. 28 U.S.C. § 2244(d); e.g., Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000). The limitation period begins to run on the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The limitation period is tolled during the pendency of a "properly filed" state petition for collateral review. Id. § 2244(d)(2).

AEDPA sets forth the standard of review that a federal court must apply to a timely, properly exhausted claim. This standard is intentionally "difficult to meet," in light of the

deference due to state courts under AEDPA.  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

If a state court has adjudicated a habeas applicant's claim on the merits, the reviewing federal

court must generally defer to the state court adjudication, except in narrow circumstances.

Section 2254(d)(1) of Title 28 of the United States Code established two distinct paths for the

invalidation of a state conviction on federal habeas review.  First, federal habeas relief is

warranted if a state conviction is "contrary to . . . clearly established Federal law."  28 U.S.C.

§ 2254(d)(1).  This path applies when a state court's actions are "diametrically different" or

"mutually opposed" to clearly established law.  Williams v. Taylor, 529 U.S. 362, 406 (2000)

(internal quotation marks omitted).  Second, federal habeas relief is appropriate if the state

conviction "involve[s] an unreasonable application of[] clearly established Federal law."  28

U.S.C. § 2254(d)(1).  This path encompasses instances in which the state court applied the

proper Supreme Court precedent to specific facts in an objectively unreasonable way or where

the court unreasonably extended (or refused to extend) a clearly established rule.  Williams, 529

U.S. at 408–09.

Alternatively, under 28 U.S.C. § 2254(d)(2), federal courts may grant habeas relief based

on claims previously resolved in a state proceeding if the state adjudication "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Factual determinations made by state courts are

presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear

and convincing evidence.  Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000).  This

presumption of correctness applies to factual determinations made by both state trial and

appellate courts.  E.g., Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001).

However, if a properly preserved claim was not adjudicated on the merits, AEDPA's deferential standards will not apply.  See, e.g., Holloway v. Horn, 355 F.3d 707, 718 (3d Cir. 2004).  In such an instance, the reviewing court "must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA."  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

B.  Reviewing a Report and Recommendation

When assessing a magistrate judge's report and recommendation, the reviewing court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.

III. Analysis

A.  Petitioner's Petition for a Writ of Habeas Corpus and His Objections to the Report and Recommendation

Magistrate Judge Angell recommended denial of habeas relief with respect to each of Petitioner's claims.  Petitioner filed objections to the Report and Recommendation.  After considering these documents and the entire record, the Court predominantly agrees with the analysis and conclusions set forth in the Report and Recommendation.  However, the Court disagrees with several points, as discussed further below.

But as a preliminary matter, the Court finds that Petitioner has satisfied AEDPA's threshold procedural requirements.  Petitioner exhausted his claims because he presented his allegations, with largely the same factual and legal substance, to the Superior Court for direct review.  No procedural bars prevented the state from considering Petitioner's claims, so

Petitioner's assertions are not procedurally defaulted.[2]  Finally, Petitioner's habeas petition was

timely filed.  Petitioner did not seek review pursuant to the PCRA, so the statutory tolling

provision is inapplicable.  The federal limitation period thus commenced on the date on which

the state court judgment became final, as no other date provided by statute applies.  The statute

of limitations on Petitioner's habeas petition began to run on November 29, 2014, thirty days

following the Pennsylvania Superior Court's dismissal of Petitioner's direct appeal.  Petitioner

filed his habeas petition on January 6, 2015, thirty-eight days after his conviction became final

and well within the one-year statute of limitations period.[3]  This Court may therefore consider

Petitioner's habeas petition.

       1.   Petitioner's claim under Batson v. Kentucky

Petitioner argues that the magistrate judge erred by recommending denial of Petitioner's

challenge under Batson v. Kentucky, 476 U.S. 79 (1986).  (Objs. 20.)  Petitioner contends that

the prosecution did not offer a race-neutral reason for excluding Juror Number 3 and that the trial

judge applied an erroneous standard in stating that a pattern of discrimination was necessary to

state a prima facie case under Batson.  (Mem. Supp. Pet. 38.)  During voir dire, Petitioner

objected when the prosecutor exercised a peremptory strike against an African-American

venireperson.  (Tr. of Voir Dire 107, Doc. No. 17-45.)  The prosecutor explained that he had

exercised the strike because "[the venireperson] is a pharmacist and there's an element of

---

[2] As discussed below, the Court disagrees with the Report and Recommendation's finding that Petitioner's sixth claim for relief has been procedurally defaulted.

[3] That Petitioner did not seek review of the Superior Court's decision by the Pennsylvania Supreme Court does not affect the timeliness analysis.  On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218, which declared that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement.  The Third Circuit has recognized this order's validity.  See Lambert v. Blackwell, 387 F.3d 210, 233–34 (3d Cir. 2004), cert. denied, 544 U.S. 1063 (2005).  Additionally, Petitioner's decision to forego Pennsylvania's PCRA process does not preclude federal habeas review.  Resort to state post-conviction collateral proceedings is not required under AEDPA, provided that the petitioner properly raised his or her claims on direct appeal.  See, e.g., Holloway v. Horn, 355 F.3d 707, 718 (3d Cir. 2004) ("'A petitioner who has raised an issue on direct appeal . . . is not required to raise it again in a state post-conviction proceeding.'" (alteration in Holloway) (quoting Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997)); Gomez v. Pitkins, No. 10-0966, 2010 WL 7765836, at *4 (E.D. Pa. Oct. 20, 2010).

Oxycontin sales on the parts [sic] of the victim in this case.  Also, she is young.  And I tend not

to have young people.  You also need a pattern to show any sort of Batson challenge.  There is

also a remaining African American, number 29."  (Tr. of Voir Dire 107.)  Petitioner argued in

response that he did not believe that the venireperson's profession "would have any type of

effect on the case or whatnot.  That's making assumptions saying they would be biased or saying

they'd have some type of issue."  (Tr. of Voir Dire 107–08.)  He also claimed that excluding the

venireperson for being young constituted impermissible age discrimination.  (Tr. of Voir Dire

108.)  The trial judge, in considering the challenge, stated at first that "[he didn't] see a racial

neutral reason.  Just being young is a—".  (Tr. of Voir Dire 108–09.)  However, he ultimately

allowed the peremptory strike, explaining, "The law is that there's no pattern.  Clearly you have

to establish a pattern of discrimination."  (Tr. of Voir Dire 109–10.)

        In its review of the trial court proceedings, the Pennsylvania Superior Court concluded

that even assuming that Petitioner had satisfied the first prong of Batson by making a prima facie

showing of racial discrimination, his claim failed under the other prongs because "the record

confirms . . . that the Commonwealth gave a credible race-neutral reason for excluding Juror

Number 3."  (Commonwealth v. Oke, No. 534 EDA 2013, 2014 WL 10558734 (Pa. Super. Ct.

Oct. 30, 2014) ("Oct. 30, 2014 Super. Ct. Op."), at 15, Doc. No. 17-116.)  According to the

Superior Court, the nature or type of the venireperson's employment is a valid, race-neutral

explanation under both state and federal law.  (Oct. 30, 2014 Super. Ct. Op. 13–15.)  The

Superior Court concluded that the prosecution's explanation for dismissing the venireperson was

not deficient.  (Oct. 30, 2014 Super. Ct. Op. 13–15.)

        The magistrate judge agreed with the Superior Court.  The Report and Recommendation

states that the Superior Court's conclusion was reasonable, that nothing in the record indicated

that the Superior Court misinterpreted the facts or unreasonably applied the law under <u>Batson</u>, and that Petitioner's claim is without merit.  (R. & R. 12.)  Petitioner objected to the Report and Recommendation, repeating the arguments set forth in his habeas petition.  (<u>See</u> Objs. 20–31.)

Under <u>Batson</u>, the trial court must first determine whether the defendant made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.  476 U.S. at 96–97.  If the defendant makes this prima facie showing, the burden shifts to the prosecutor to provide a race-neutral explanation for the challenge; this reason need not be persuasive or even plausible.  <u>Id.</u> at 97–98; <u>Purkett v. Elem</u>, 514 U.S. 765, 767–68 (1995).  Finally, the court must decide whether the defendant successfully established purposeful discrimination.  <u>Batson</u>, 476 U.S. at 98.  Under AEDPA, the reviewing court must determine whether the state court's factual findings were unreasonable in light of the evidence.  <u>See</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006) (citing 28 U.S.C. § 2254(d)(2)).

Petitioner correctly asserts that <u>Batson</u> does not require establishing a pattern of discrimination.  <u>See, e.g.</u>, <u>Holloway v. Horn</u>, 355 F.3d 707, 728 (3d Cir. 2004) ("But a defendant's *Batson* objection need not always be based on a 'pattern' of strikes; it can be based, for example, on a single strike accompanied by a showing that the prosecutor's statements and questions to the juror (or to prior jurors) support an inference of discrimination.").  Nevertheless, the Court overrules his objection to the Report and Recommendation.  Magistrate Judge Angell's conclusion comports with our own: the Pennsylvania Superior Court reasonably upheld the trial court's dismissal of Petitioner's <u>Batson</u> challenge.  The Superior Court found that the prosecutor's race-neutral explanation was credible.  This finding is supported by and is reasonable in light of the evidence.  Moreover, Petitioner did not offer compelling arguments that the prosecution's race-neutral reasons were pretextual, so he has not established purposeful

10

discrimination.  In light of these considerations, the Superior Court's factual findings are entitled

to a presumption of correctness.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001);

Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000).  Since Petitioner has failed to rebut this

presumption, the Court overrules Petitioner's objection with respect to his Batson challenge.

      2.   Petitioner's allegations of prosecutorial misconduct

Petitioner next alleges that the magistrate judge erred by recommending denial of his

Napue and Brady claims.  According to Petitioner, the Commonwealth presented false evidence

at trial in violation of Napue v. Illinois, 360 U.S. 264 (1959), and withheld evidence in violation

of Brady v. Maryland, 373 U.S. 83 (1963).  (Objs. 40.)  In support of his Napue claim, Petitioner

argues that the victim, Shawn Schwarz,[4] committed perjury while testifying against Petitioner at

trial, that the prosecutor secured this false testimony by entering an agreement with the victim,

and that the Commonwealth impermissibly failed to correct the false testimony.  (Mem. Supp.

Pet. 64.)  The prosecutor disclosed that the Commonwealth had entered into an agreement with

Schwarz, who had been incarcerated for an unrelated matter at the time of the proceedings

against Oke.  (Tr. of Voir Dire 18–19.)  The agreement provided that Schwarz would be released

on house arrest in the unrelated matter if the probation officer determined that house arrest would

be appropriate and if Schwarz testified truthfully in the Commonwealth's case against Oke.  (Tr.

of Voir Dire 18.)  The agreement would no longer be valid if Schwarz failed to testify truthfully.

(Tr. of Voir Dire at 19.)  According to Petitioner, Schwarz failed to testify truthfully at trial.

(Mem. Supp. Pet. at 64.)  To support this contention, Petitioner points to numerous alleged

"inconsistencies" in Schwarz's testimony, which Petitioner claims make the falsity of Schwarz's

testimony "blatantly obvious."  (Mem. Supp. Pet. at 60.)  Since Schwarz was eventually released

---

[4] This Court spells the victim's name as "Shawn Schwarz," even though the Report and Recommendation spells his name as "Sean Schwarz."  Since the transcripts from the state trial proceedings use the former spelling rather than the latter (see, e.g., May 2, 2012 Tr. of Jury Trial 23, Doc. No. 17-46), this Court has opted to use that form.

on house arrest, Petitioner reasons that Schwarz had received another, undisclosed deal from the Commonwealth.  (Mem. Supp. Pet. at 62.)  Petitioner claims that the existence of a second, undisclosed deal is evidenced by the fact that Schwarz received a material benefit despite, allegedly, having breached the disclosed agreement with the Commonwealth.  (Mem. Supp. Pet. 62.)  Petitioner argues that, by failing to disclose the existence of this alleged second deal, the Commonwealth also violated Brady v. Maryland.  (Mem. Supp. Pet. at 66.)

The Superior Court denied Petitioner's claim based in part on a determination that the only inconsistency in Schwarz's testimony resulted from threats made by Oke; the reason for this "inconsistency" was clearly explained and had nothing to do with any alleged undisclosed deal. (Oct. 30, 2014 Super. Ct. Op. 8–11.)  The Superior Court determined that there were no other inconsistencies in Schwarz's testimony.  (Oct. 30, 2014 Super. Ct. Op. 8–11.)  Further, circumstantial evidence supported Schwarz's statements.  (Oct. 30, 2014 Super. Ct. Op. 8–11.) The Superior Court discussed at length the state-court case, Commonwealth v. Karkaria, 625 A.2d 1167 (Pa. 1993), under which Petitioner's claim was not cognizable.  (See Oct. 30, 2014 Super. Ct. Op. 6–10.)  Notably, the Superior Court did not cite any federal law in the course of its discussion of Petitioner's allegations.

According to the Report and Recommendation, the Superior Court's denial of Petitioner's Napue claim did not constitute an unreasonable application of federal law.  (R. & R. 14.) Petitioner's claims were "based on nothing more than his bald assertions that it is 'blatantly obvious' Mr. Schwarz testified against Petitioner untruthfully."  (R. & R. 14.)  The magistrate judge stated that the record belies Petitioner's claims as to falsity.  (R. & R. 14.)  The magistrate judge also concluded, without elaboration, that Petitioner's Brady claim lacks merit.  (R. & R. 14.)

Petitioner objected to the Report and Recommendation on several grounds.  He argues in part that the Superior Court never considered his Napue or Brady claims, so the magistrate judge was incorrect in stating that the court did.  (Objs. 41–42.)  According to Petitioner, the portion of the Superior Court opinion cited by the magistrate judge was irrelevant to his Napue and Brady claims because they related to petitioner's evidentiary-sufficiency argument.  (Objs. 41–42.)  Petitioner contends that "[t]he R&R has erroneously combined the sufficiency of the evidence and the *Brady*/*Napue* arguments and, consequently, has given a garbled account of Petitioner's argument."  (Objs. 41–42.)  Petitioner argues that the Superior Court never reached the merits of his Napue and Brady claims.  (Objs. 42.)  Even assuming that the court did reach the merits, Petitioner argues, the court's analysis is contrary to clearly established federal law because the court applied an incorrect standard in resolving Petitioner's claims.  (Objs. 42.)

This Court notes first that, in his appeal to the Pennsylvania Superior Court, Petitioner made his Napue and Brady arguments under the broader umbrella of an "after-discovered evidence" claim.  Petitioner cited Brady in his brief, but he never discussed Napue.  Nevertheless, Petitioner argued at length about the alleged falsity of Schwarz's testimony and about the existence of a deal between Schwarz and the Commonwealth.  (See Br. for App. at 37–43, Commonwealth v. Oke, No. 534 EDA 2013 (Pa. Super. Ct. 2014).)  Petitioner argued the substance of a Napue claim and adequately put the Superior Court on notice that he was asserting a violation of a constitutional right.  Accordingly, this Court interprets Petitioner's convoluted appellate brief as properly presenting both a Napue claim and a Brady claim to the Superior Court.  The Superior Court, in its opinion, addressed Petitioner's after-discovered evidence claim and the various factual allegations related to it, but the court cited neither Napue nor Brady in its analysis.  Based on this Court's interpretation of the Superior Court's opinion, it is apparent that

13

the Superior Court never reached the merits of Petitioner's federal claims, though it did make factual findings relevant to each.  The court provided no explanation for why it did not consider Petitioner's federal claims.

In spite of the Superior Court's error, this Court may still review the merits of Petitioner's claim.  Since he included his arguments with respect to the two claims in his appellate brief, the two claims are both exhausted, and this Court is permitted to review his claims de novo.  See, e.g., Lambert v. Blackwell, 387 F.3d 210, 238 (3d Cir. 2004); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  However, "[e]ven in this situation, the State court's relevant factual determinations are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence."  Han Tak Lee v. Glunt, 667 F.3d 397, 403 (3d Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)).

In Napue v. Illinois, the Supreme Court held that a prosecutor's failure to correct witness testimony that the prosecutor knew to be false violated the Due Process Clause of the Fourteenth Amendment.  360 U.S. at 265–72.  Under Brady v. Maryland, the government may not withhold evidence that is material to the guilt or punishment of a criminal defendant, as to do so would violate the defendant's right to due process.  373 U.S. at 87.

After reviewing the record, this Court agrees with the conclusions set forth in the Report and Recommendation and rejects Petitioner's Brady and Napue claims.  The Superior Court found that Schwarz's testimony was not false and did not contain unexplained inconsistencies. This finding is supported by the record and must be presumed correct, as Petitioner has failed to rebut the presumption by clear and convincing evidence—or, indeed, through any evidence. Since Schwarz's testimony was not false, there could not have been a Napue violation. Additionally, the Superior Court stated that the deal between Schwarz and the Commonwealth

was disclosed during trial.  The Superior Court did not explicitly reference a second deal, but this Court infers from the Superior Court's opinion that the Superior Court rejected Petitioner's contentions regarding a second deal.  The record also supports this inference, and this Court must therefore defer to the Superior Court's factual findings.  Petitioner's claims about a secret, second deal amount only to bald allegations without any evidence to support them.  Petitioner has failed to rebut the presumption of correctness that applies to the Superior Court's factual findings.  Since the only agreement between the Commonwealth and the witness was disclosed, there could not have been a <u>Brady</u> violation.

> 3.   Petitioner's claim that the trial judge should have recused himself

Next, Petitioner argues that the magistrate judge erred in recommending that the Court deny Petitioner's "judicial bias" claim.  (Objs. 31.)  In his habeas petition, Petitioner set forth a litany of complaints against the trial judge.  Petitioner's allegations include that the judge was involved in the "accusatory" process, acted as a prosecutor, relied on personal knowledge to resolve issues of fact, and "became involved in a long, and bitter, dispute with the prisoner." (Mem. Supp. Pet. 78.)  To support his various allegations, Petitioner cites a number of exchanges that he had with the trial judge, which are detailed at length in his habeas petition and in the Report and Recommendation.  (Mem. Supp. Pet. 78.)  Petitioner argues, based on the foregoing allegations of Judge Smyth's bias, that Judge Smyth should have recused himself.

The Superior Court reviewed Petitioner's allegations and concluded that nothing in the record supported his contention that recusal was necessary.  (Oct. 30, 2014 Super. Ct. Op. 19.) The court stated that "Judge Smyth [had] consistently attempted to explain the legal process to appellant[,] who steadfastly refused to cooperate."  (Oct. 30, 2014 Super. Ct. Op. 19.)  The Superior Court resolved the claim on the basis of Pennsylvania state law and did not address or

cite federal law.  The magistrate judge found that the Superior Court's denial of Petitioner's claim was reasonable.  According to the magistrate judge, "[a]lthough the Superior Court did not cite to a federal case in its opinion, that does not demonstrate an unreasonable application of clearly established federal law."  (R. & R. 16.)

Petitioner argues in response that the Superior Court applied an incorrect standard to his recusal claim because the Superior Court applied state rather than federal law in assessing Petitioner's contentions.  (Objs. 31–32.)  He cites a number of federal cases and repeats the laundry list of arguments from his habeas petition.  (Objs. 34–40.)

The Due Process Clause requires recusal when a judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [a party] in his [or her] case."  Tumey v. Ohio, 273 U.S. 510, 523 (1927).  Recusal is also warranted when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  Withthrow v. Larkin, 421 U.S. 35, 47 (1975).  As a general matter, however, "'most matters relating to judicial disqualification [do] not rise to a constitutional level.'"  Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876 (2009) (alteration in Caperton) (quoting FTC v. Cement Inst., 333 U.S. 683, 702 (1948)).

States may, of course, "impose more rigorous standards for judicial disqualification," since "[t]he Due Process Clause demarks only the outer boundaries of judicial disqualification." Caperton, 556 U.S. at 889–90.  In addition to the objective standards for recusal set forth by the Supreme Court, Pennsylvania state law requires that trial judges recuse themselves whenever there is even "the appearance of impropriety."  See, e.g., In re Lokuta, 11 A.3d 427, 436 (Pa. 2011).  "Because the [state] codes of judicial conduct provide more protection than due process

requires, most disputes over disqualification will be resolved without resort to the Constitution." Caperton, 556 U.S. at 890.

This Court adopts the magistrate judge's reasoning and conclusion with respect to this claim and overrules Petitioner's objections. As the Report and Recommendation states, the Superior Court's discussion and application only of state law is neither inconsistent with nor an unreasonable application of federal law. Indeed, as the U.S. Supreme Court stated in Caperton, most disputes about judicial disqualification can be resolved without reference to federal Constitutional law because most states, including Pennsylvania, have adopted more stringent recusal requirements than those required under the Due Process Clause. See id. at 889–90. The state courts' decisions are consistent, moreover, with the federal principles outlined above and are fully supported by the record. The record gives no indication that the trial judge was biased and that he should have recused himself. Petitioner has not alleged that the trial judge had any interest in the matter, nor do Petitioner's contentions support a finding that there was any appearance of impropriety. In light of the foregoing, the Court holds that the Superior Court reasonably denied Petitioner's recusal claim, and Petitioner is not entitled to habeas relief.

4.   Petitioner's claim that the trial court lacked subject-matter jurisdiction

Petitioner next challenges the Report and Recommendation's conclusion that Petitioner was not entitled to habeas relief on his claim that the trial court lacked subject-matter jurisdiction. Petitioner had filed a notice to remove his case to the United States District Court for the Eastern District of Pennsylvania, but the action was remanded to the Pennsylvania state court since Petitioner had failed to establish why removal was appropriate. (Order, United States v. Oke, No. 11-321 (E.D. Pa. July 12, 2011), at 1 n.1, Doc. No. 17-50.) Petitioner filed another notice of removal two weeks later, this time to remove the action to the United States District

Court for the Middle District of Florida.  (Order, <u>United States v. Oke</u>, No. 11-405 (E.D. Pa. Oct. 25, 2012) ("Oct. 25, 2012 Order"), at 1 n.1, Doc. No. 17-103.)  The Middle District of Florida transferred the action to the Eastern District of Pennsylvania.  (Oct. 25, 2012 Order 1 n.1.)  In the interim, almost at the conclusion of Petitioner's criminal trial, Petitioner's stand-by counsel[5] informed the trial court that Petitioner had filed "a notice of removal, a notice of communist conspiracy to deprive [Petitioner] of his rights, and a couple other things."  (May 2, 2012 Trial Tr. 42, Doc. No. 17-46.)  Several months after Petitioner's trial concluded, once again, the United States District Court for the Eastern District of Pennsylvania remanded the action to the Pennsylvania Court of Common Pleas after determining that Petitioner had not stated any basis for removal.  (Oct. 25, 2012 Order 1 n.1.)  The trial court sentenced Petitioner in January of 2013.

The Superior Court, on considering Petitioner's claim on direct appeal, held that no relief was due to him because he had not complied with the removal requirements under 28 U.S.C. § 1446.  Magistrate Judge Angell agreed with the Superior Court's determination.[6]

Petitioner argues that the magistrate judge erred in recommending that this Court deny Petitioner's "removal jurisdiction" claim.  According to Petitioner, he "is not arguing a lack of subject-matter jurisdiction claim (which is a state law claim); [he] is contesting that the trial court lacked jurisdiction due to removal jurisdiction."  (Objs. 54.)  He also contends that he complied with the requirements set forth in 28 U.S.C. §§ 1446 and 1455.  (Objs. 54.)  According

---

[5] Petitioner proceeded pro se at his trial.

[6] The Report and Recommendation erroneously states that "the trial court was not aware of petitioner's second removal attempt until after his conviction."  (R. & R. 9.)  In fact, as noted above, Petitioner's stand-by counsel brought the second "notice of removal" to the trial court's attention shortly after the trial court announced a brief recess and told the jury, "[Y]ou haven't heard the entire case.  You won't hear the entire case until you hear the closing arguments and you hear my charge on the relevant law to be applied in this case."  (<u>See</u> May 2, 2012 Trial Tr. 40–43.)  Though the record does not support a finding that Petitioner properly notified the trial judge of the removal, it is clear from the record that the trial court had notice of the removal prior to the trial's conclusion.  This does not however, change this Court's ultimate conclusion, as will be explained further.

to Petitioner, once the case was removed, the Court of Common Pleas no longer had jurisdiction. (Objs. 55.)

This Court overrules Petitioner's objections and agrees with the magistrate judge's conclusion that the Montgomery County Court of Common Pleas had subject-matter jurisdiction in this matter.  However, the Court departs from the analysis set forth in the Report and Recommendation, as well as that in the Superior Court's opinion.

Contrary to the assertions of Petitioner, the Pennsylvania Superior Court, and the magistrate court, 28 U.S.C. § 1446 was irrelevant in the instant matter.  Section 1446 governs removal of civil, not criminal, actions.[7]  See 28 U.S.C. § 1446.  Consequently, whether Petitioner complied with this provision does not matter.  Instead, Petitioner sought removal pursuant to § 1443, which governs removal of certain criminal prosecutions involving a civil rights component.  See 28 U.S.C. § 1443.  Section 1455 rather than § 1446 thus sets forth the relevant procedures in this matter.  See 28 U.S.C. § 1455; In re Ingras, 601 F. App'x 71, 75 (3d Cir. 2015).

Under § 1455, a notice of removal may be filed no later than thirty days after the arraignment in state court or at any time before trial, whichever is earlier.  28 U.S.C. § 1455(b)(1).  Further, "[t]he filing of a notice of removal of a criminal prosecution shall not prevent the State court in which prosecution is pending from proceeding, except that a judgment of conviction shall not be entered unless the prosecution is first remanded."  Id. § 1455(b)(3).

The Court overrules Petitioner's objections.  As an initial matter, as the Eastern District of Pennsylvania district court held, Petitioner was not entitled to remove his case under either § 1442(a) or under § 1443(1).  (See Oct. 25, 2012 Order 1 n.1.)  Regardless of Petitioner's

---

[7] Technically, § 1446 also governs removal of a small subset of criminal actions—namely, criminal prosecutions removed pursuant to 28 U.S.C. § 1442(a).  However, § 1442(a) is not relevant to this case, as is clear from the plain language of that provision.

contentions, removal was unwarranted, and the Court of Common Pleas indisputably had

jurisdiction in the action.  See Commonwealth v. Bethea, 828 A.2d 1066, 1074 (Pa. 2003).

Moreover, consistent with the procedures set forth under § 1455, Petitioner was not sentenced

until January 17, 2013 (see Docket Sheet for Commonwealth v. Oke, No. CP-46-CR-0003220-

2011), [8] several months following entry by the Eastern District of Pennsylvania of the order

remanding the case to the Court of Common Pleas of Montgomery County (see Oct. 25, 2015

Order 1.).  A judgment of conviction thus was not entered until after the case was remanded.

Accordingly, not only did the state court have jurisdiction, but it also adhered to the § 1455

procedures.  Lastly, Petitioner's remaining arguments lack merit.  His attempt to distinguish

between subject-matter jurisdiction and removal jurisdiction is plainly erroneous.  The substance

of his argument is that the trial court lacked jurisdiction, but, as discussed above, the trial court

clearly had jurisdiction.  This Court denies Petitioner's fourth claim for relief.

     5.   Petitioner's claim that the victim was pressured to testify

     Petitioner next objected to the magistrate judge's recommendation with respect to

Petitioner's fifth claim.  In his fifth claim for relief, Petitioner alleges that Schwarz's attorney

and the trial judge in the unrelated criminal action against Schwarz "threatened, retaliated, and

intimated [sic]" Schwarz into testifying against Petitioner.  (Mem. Supp. Pet. 99–104.)  This

conduct, Petitioner alleges, violated Petitioner's rights under the Due Process Clause, denied

Petitioner an impartial tribunal, and resulted in a violation of Sheppard v. Maxwell, 384 U.S. 333

(1966).  (Mem. Supp. Pet. 99–104.)  To support these allegations, Petitioner refers to text

---

[8] The docket of the Court of Common Pleas of Montgomery County in the criminal matter before Judge Smyth,
Commonwealth v. Oke, No. CP-46-CR-0003220-2011, was not among the documents included in the record before
this Court.  However, a copy of the docket sheet was procured.  The Court takes judicial notice of the docket sheet,
as is permitted under Federal Rule of Evidence 201.  See Fed. R. Evid. 201(b)–(c)  (stating that "[t]he court may
judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily
determined from sources whose accuracy cannot reasonably be questioned" and that "[t]he court . . . may take
judicial notice on its own").

messages that Schwarz sent to Petitioner, in which Schwarz stated that he did not believe that Petitioner committed the alleged crimes.  (Mem. Supp. Pet. 101.)  He cites a message in which Schwarz told Oke, "The Judge said, because of my failure to cooperate in your case, I don't have a standing chance with him."  (Mem. Supp. Pet. 101.)  Petitioner maintains that Schwarz's attorney threatened Schwarz by telling him that, in the unrelated criminal action against Schwarz, Schwarz "would not be afforded the right to an impartial tribunal, or the right to a fair trial" if Schwarz did not cooperate in the Commonwealth's case against Petitioner.  (Mem. Supp. Pet. 102.)  Petitioner argues that Schwarz's attorney also "intentionally bias[ed] [Schwarz] against the petitioner" through these threats.  (Mem. Supp. Pet. 103.)

It is unclear whether the Pennsylvania Superior Court addressed the merits of Plaintiff's claim.  The court summarily concluded, in a general assessment of whether the trial court or prosecutor had committed misconduct, that Petitioner's "laundry list" of arguments were meritless and contravened by the record.  (Oct. 30, 2014 Super. Ct. Op. 12.)  The court did not, however, cite any federal law in making this determination, nor did it address Petitioner's specific allegations with respect to Schwarz's attorney or the trial court in the case involving Schwarz.  The court did make relevant factual findings elsewhere in its opinion, namely that Schwarz's inconsistent text messages and testimony resulted from Petitioner's attempts to threaten and intimidate Schwarz.  (Oct. 30, 2014 Super. Ct. Op. 8–11.)

In spite of the Superior Court's failure to address the substance of Petitioner's claim, this Court may still reach the merits of Petitioner's fifth claim.  Since he included his arguments in his appellate brief, Petitioner exhausted his claim, and this Court is permitted to review it de novo.  See, e.g., Lambert v. Blackwell, 387 F.3d 210, 238 (3d Cir. 2004); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  However, as stated above, the Court must defer to the state courts'

relevant factual findings, unless Petitioner rebuts the presumption of correctness through clear and convincing evidence.  See Han Tak Lee v. Glunt, 667 F.3d 397, 403 (3d Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)).

The magistrate judge recommended denial of Petitioner's claims.  As stated in the Report and Recommendation, the Superior Court and the trial court found that Schwarz's testimony at trial was credible.  (R. & R. 20–21.)   Moreover, the report continues, the record supports a finding that Schwarz's testimony at trial was in fact freely given.  (R. & R. 21.)  According to the magistrate judge, "[t]he prosecution's authority to offer inducements to witnesses in exchange for truthful testimony has a long history of acceptance in American jurisprudence."  (R. & R. 21.)  Thus the agreement with Schwarz was permissible.  (R. & R. 21.)

Petitioner objected to the Report and Recommendation on several grounds.  Among his many arguments, Petitioner denies the relevance of the magistrate judge's analysis and claims that the report mischaracterizes Petitioner's habeas petition. (Objs. 57.)  He also argues that the Superior Court never reached the merits of Petitioner's arguments.  (Objs. 58.)  Petitioner maintains that "any finding that Mr. Schwarz was not retaliated against by his trial judge and attorney would be unsupported by the record."  (Objs. 58.)

This Court overrules Petitioner's objections, although Petitioner is correct that the Superior Court did not reach the merits of his argument.  The Report and Recommendation correctly concludes that Petitioner's fifth claim is meritless.  Petitioner attempts to characterize the text messages as statements made by Schwarz under oath at trial, but Petitioner's fifth claim clearly related to text messages from Schwarz to Petitioner.  At trial, Schwarz admitted sending the messages; however, he also explained that he had sent the messages in order to mislead Petitioner and while under the influence of drugs. (May 1, 2012 Trial Tr. 164–65.)  The Superior

Court concluded that Schwarz's in-court testimony was credible.  (See Oct. 30, 2014 Super. Ct. Op. 8–11.)  Petitioner's factual allegations are therefore unsupported by the record.

Petitioner's legal allegations also lack merit.  There is no indication that Petitioner's due process rights and right to an impartial tribunal were violated in any way.  That Schwarz was offered some inducement to testify truthfully against Petitioner was not a violation of any right, as such agreements between prosecutors and potential witnesses are lawful.  See, e.g., Lisenba v. California, 314 U.S. 219, 284–85 (1941).  Additionally, Petitioner has not stated a plausible claim under Sheppard.  In Sheppard, the Supreme Court held that the trial court failed to "fulfill his duty to protect [the defendant] from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the courtroom."  384 U.S. at 363.  This was because due process "requires that the accused receive a trial by an impartial jury free from outside influences."  Id. at 362.  Even if Petitioner's factual allegations were true, Schwarz's trial attorney and trial judge were not outside influences that acted on the jury.  The Court therefore denies Petitioner's fifth claim for relief.

6.   Petitioner's claim under Alleyne v. United States

Petitioner claims that his sentence was improperly enhanced under Alleyne v. United States, 133 S. Ct. 2151 (2013), because the trial judge rather than the jury found that Petitioner used a deadly weapon, which allegedly increased the applicable mandatory minimum sentence. Though Petitioner did not include his Alleyne claim in his initial submission to the Superior Court, Petitioner contends that on July 30, 2013, he filed a motion before the Superior Court requesting permission to submit a supplemental brief addressing his additional claim, that the court granted his request on August 19, 2013, and that his supplemental brief was filed on the docket on August 19, 2013.  (Mem. Supp. Pet. 130–31.)  The Report and Recommendation

states, however, that Petitioner procedurally defaulted his Alleyne claim because he did not raise this claim before the Pennsylvania Superior Court and his time for seeking *allocator* by the Pennsylvania Supreme Court has now expired.  (R. & R. 7–9.)  According to the magistrate judge, there are no entries on the Pennsylvania Superior Court's docket indicating that Petitioner raised the claim below, and there are no amended filings or supplemental briefs present in the record that include Petitioner's arguments under Alleyne.  (R. & R. 8.)  The Report and Recommendation thus does not reach the merits of Petitioner's Alleyne claim.  Petitioner now argues that this failure was erroneous.  (Objs. 19.)

After reviewing the record before the Court,[9] the Court disagrees with the magistrate judge's finding.  Petitioner did in fact raise his Alleyne claim before the Superior Court, but he misidentified the relevant dates in his habeas petition.  The appeal docket sheet clearly indicates that Petitioner filed a motion entitled "Motion/Application for Permission to File a Supplemental Brief to Address the Appellant's Illegal Sentence and the Applicability of Alleyne v. United States" on August 4, 2014.  (Docket Sheet for Commonwealth v. Oke, No. 534 EDA 2013 (Pa. Super. Ct.).)  As Petitioner alleges, the motion included the supplemental brief on the Alleyne claim as an attachment.  (Appellant's Mot. to Suppl, No. 534 EDA 2013 (Pa. Super. Ct. Aug. 4, 2014.)  Further, on August 19, 2014, the court granted Petitioner's motion to file the supplemental brief.  (Order, Commonwealth v. Oke, No. 534 EDA 2013 (Pa. Super. Ct. Aug. 19, 2014).)

The Pennsylvania Superior Court did not reach the merits of Petitioner's Alleyne claim, nor, inexplicably, did it even reference the claim or state a basis for this omission in its October

---

[9] Copies of the documents referenced by Petitioner and filed before the Pennsylvania Superior Court were not in the record before the Court.  However, copies of these documents were obtained, so this Court had a full and proper record before it.  The Court takes judicial notice of these documents pursuant to Federal Rule of Evidence 201.  See Fed. R. Evid. 201(b)–(c); supra note 4.

30, 2014 memorandum opinion on Petitioner's appeal.  (See Oct. 30, 2014 Super. Ct. Op.)  But, as stated already, "[e]ven if a state court fails to rule on the merits of a claim, a properly presented claim will be considered exhausted."  Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004) (citing Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984)).  Thus this Court may address the merits of Petitioner's Alleyne argument, employing de novo review.  See, e.g., Lambert v. Blackwell, 387 F.3d 210, 238 (3d Cir. 2004); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

After considering the merits of Petitioner's Alleyne claim, the Court holds that he has not stated a colorable Alleyne claim.  In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and found beyond a reasonable doubt.  133 S. Ct. at 2155.  However, the record indicates that Petitioner's sentence was not based on a mandatory minimum.  In fact, the prosecutor clearly stated at sentencing that the Commonwealth "had filed a notice to withdraw its intent to seek a mandatory sentence."  (Tr. of Sentencing Hr'g 4, Doc. No. 17-3.)  Alleyne is inapplicable to the facts before the Court, and the Court rejects Petitioner's sixth claim for relief.

> 7.   Petitioner's claim that the magistrate judge did not review the entire state court record

Petitioner also objected to the Report and Recommendation because he claims that the magistrate judge did not review the entire state court record.  (Objs. 18.)  Specifically, he alleges that the magistrate judge erred by failing to consider the jury questionnaires, Petitioner's supplemental brief before the Superior Court, and the Superior Court's August 19, 2014 order granting Petitioner's motion to supplement his appeal.  (Objs. 18.)  He argues that the entire Report and Recommendation should be rejected because of these alleged shortcomings.  (Objs. 19.)

This Court declines to reject the entire Report and Recommendation, though, as previously discussed, it agrees that the magistrate judge erred by failing to consider Petitioner's supplemental brief and the Superior Court's August 19, 2014 order.  This Court disagrees, however, with Plaintiff's contention that failing to consider the jury questionnaires was erroneous.  First, the Court notes that the record before the magistrate judge was substantially complete; Petitioner alleges only that three documents were not before the magistrate judge. Each of the three documents was relevant only to a portion of Petitioner's prolix petition—the first, to Petitioner's Batson challenge, and the remaining two to Petitioner's Alleyne claim.  The omission of these documents from the magistrate judge's review did not make the entire Report and Recommendation defective.  Courts have held that "the reviewing court need only consider the pertinent and relevant transcripts and documents in a habeas proceeding."  See Mandeville v. Smeal, No. 3:CV-09-1125, 2012 WL 4461080, at *8 (M.D. Pa. Sept. 25, 2012), aff'd, 578 F. App'x 149 (3d Cir. 2014); accord Durham v. Piazza, No. 07-4338, 2009 WL 2902275, at *3 (E.D. Pa. Sept. 9, 2009).  Under this principle, the magistrate judge erred by failing to consider Petitioner's supplemental Superior Court brief and the Superior Court's August order granting Petitioner's motion to supplement his appeal.  As discussed above, these documents were directly relevant to Petitioner's Alleyne claim.  Consequently, this Court did not adopt that portion of the Report and Recommendation.[10]  However, the Court finds that the magistrate judge considered the pertinent transcripts and documents with respect to Petitioner's Batson claim and need not have considered the jury questionnaires.  As such, the magistrate judge's Report and Recommendation with respect to Petitioner's Batson claim was not deficient.

---

[10] The Court emphasizes, however, that it still rejects Petitioner's claim under Alleyne.  This decision was based on the Court's independent review of the record, as well as the two previously unconsidered documents, which the Court obtained from the Superior Court docket.

B.  Petitioner's Pending Motions

Having reviewed Petitioner's habeas petition, the Court now considers the numerous

motions that Petitioner has filed.  Magistrate Judge Angell recommends that the court deny

Petitioner's motions, but provides little to no explanation for this recommendation.  (See R. & R.

22 n.10.)  The Court again predominantly agrees with the magistrate judge but writes below to

set forth the reasoning for the Court's decision.

1.  Petitioner's request for an evidentiary hearing and discovery[11]

AEDPA permits evidentiary hearings on habeas review only in limited circumstances.

See 28 U.S.C. § 2254(e).  Section 2254(e) specifically bars a district court from holding an

evidentiary hearing if the petitioner did not diligently attempt to develop a factual basis for his

claim in the state court proceedings.  Id.; accord Williams v. Taylor, 529 U.S. 420, 430 (2000).

But even if an evidentiary hearing is permissible, the decision to grant a hearing is squarely

within the district court's discretion.  Schriro v. Landrigan, 550 U.S. 465, 468 (2007).  In

exercising this discretion, the district court "must consider whether such a hearing could enable

an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant

to federal habeas relief."  Id. at 474.  In other words, the district court should determine "whether

the petition presents a *prima facie* showing which, if proven, would enable the petitioner to

prevail on the merits of the asserted claim."  Palmer v. Hendricks, 592 F.3d 386, 393 (3d Cir.

2010).  However, "if the record refutes the applicant's factual allegations or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing."  Schriro, 550 U.S. at

474.  The Third Circuit has emphasized that, in assessing whether an evidentiary hearing is

necessary, "'courts [should] focus on whether a new evidentiary hearing would be meaningful, in

---

[11] Technically, this section addresses Petitioner's requests for discovery and an evidentiary hearing in his habeas petition and his separate pending motion for discovery and an evidentiary hearing.  However, since the analysis with respect to each is the same, both are included in this section.

that a new hearing would have the potential to advance the petitioner's claim.'"  <u>Williams v. Beard</u>, 637 F.3d 195, 211 (3d Cir. 2011) (alteration in <u>Williams</u>) (quoting <u>Campbell v. Vaughn</u>, 209 F.3d 280, 287 (3d Cir.2000)).

Under Rule 6 of the Rules Governing § 2254 Cases, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  R. Gov. § 2254 Cases in the U.S. District Courts 6(a).  The Third Circuit has held that a petitioner may satisfy the good-cause requirement by "setting forth specific factual allegations which, if fully developed, would entitle him or her to the writ." <u>Williams</u>, 637 F.3d at 209 (citing <u>Harris v. Nelson</u>, 394 U.S. 286, 300 (1969); <u>Lave v. Dretke</u>, 416 F.3d 372, 380 (5th Cir. 2005)).  The petitioner bears the burden of establishing that the evidence he or she seeks is pertinent and that there is good cause for its production.  <u>See</u> R. Gov. § 2254 Cases in the U.S. District Courts 6(b); <u>accord</u> <u>Williams</u>, 637 F.3d at 209.

Petitioner requests an evidentiary hearing and discovery with respect to several of the claims that he raised in his habeas petition.  (<u>See</u> Mem. Supp. Pet. 73, 88, 104; Pet'r's Mot. for Disc. & Evidentiary Hr'g 1.)  Assuming without deciding that Petitioner diligently attempted to develop a factual basis for his claims in the state court proceedings, Petitioner is still not entitled to an evidentiary hearing.  Petitioner has not established a prima facie showing that, if proven, would enable him to prevail on the merits of his various claims.  Moreover, the state court record clearly contravenes Petitioner's morass of meritless allegations.  With respect to his request for discovery, Petitioner has failed to establish good cause.  His allegations, even if further developed, would not entitle him to habeas relief.  The Court thus denies Petitioner's request for an evidentiary hearing and discovery.

2. Petitioner's motions for sanctions

Petitioner next requests that this Court sanction Respondents for their alleged failure to comply with Magistrate Judge Angell's order that respondents file specific and detailed answers and with Rule 5 of the Rules Governing Section 2254 Cases. (Pet'r's Mot. for Sanctions 1, Doc. No. 22; Pet'r's Mot. for Sanctions 2, Doc. No. 21.) Petitioner claims that Respondents' filing was deficient because "the Commonwealth's response was not accompanied by any state court transcripts, documents, petitions, pleading's [sic], or opinions that are pertinent to the issues raised by Petitioner in his Petition for Writ of Habeas Corpus." (Mot. for Sanctions 2, Doc. No. 21.)

Petitioner is correct in stating that respondents in habeas proceedings must submit certain documents with their answer. See R. Gov. § 2254 Cases in the U.S. District Courts 5(d) ("The respondent must also file with the answer a copy of: (1) any brief that the petitioner submitted in an appellate court contesting the conviction or sentence . . . and (3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence."). Nevertheless, we deny Petitioner's motions for sanctions, as Petitioner has failed to demonstrate a basis for imposing sanctions under Rule 11 of the Federal Rules of Civil Procedure.

3. Petitioner's motion for judicial notice

Federal Rule of Evidence 201(b) provides that a court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Rule 201 further states that the court "(1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information." Id. 201(c).

29

Petitioner requests that the Court take judicial notice of the following:

(1) the trial judge stated, during jury voir dire, that he did see [sic[12]] a race-neutral explanation for the prosecution's strike against African American juror number three; (2) the prosecution conceded to the fact that the trial judge had—or claimed to have had—personal knowledge of disputed evidentiary facts (the underlying offense for which Petitioner was charged); (3) Percocets are a different narcotic than Oxycodone 30 mg; (4) Mr. Schwarz—the alleged 'victim' in this case—stated that he never told Petitioner that he is innocent, but then later conceded to telling Petitioner, through a text message, that he is innocent; (5) Mr. Schwarz made a statement, at the preliminary hearing, that he denied making when confronted with it at trial; (6) the Black's Law Dictionary Eighth Deluxe Edition definition of the word personal knowledge; and (7) the Superior Court Docket for case no.534 EDA 2013 reflecting that Petitioner filed a supplemental brief to address Alleyne, and which was granted leave by the Superior Court on August 17, 2014.

(Mot. for Judicial Notice 1–2.)  The first five of Petitioner's proposed "facts" are subject to reasonable dispute.  Moreover, to the extent that any of those "facts" are not subject to reasonable dispute, the statements are already in the record before the Court and have been reviewed.  The Court thus denies Petitioner's request to take notice of the first five "facts."  The Court grants Petitioner's request with respect to the definition of "personal knowledge"; however, judicially noticing the definition does not alter the Court's conclusion above that Judge Smyth was not biased.  Lastly, the Court denies Petitioner's request regarding the Superior Court's docket entry.  The Court has already taken judicial notice of the Superior Court's docket, as stated already, and the docket is therefore already part of the record before this Court.  As a result, Petitioner's motion is moot.  Additionally, the Court notes that Petitioner's request is factually incorrect: the Superior Court granted Petitioner's motion to supplement his appeal on August 19, 2014, not on August 17, 2014.  Thus Petitioner's motion for judicial notice is granted in part and denied in part.

---

[12] Based on the substance of Petitioner's motion, the Court assumes that Petitioner intended to state "did not" rather than "did."

4.   Petitioner's motion to supplement[13]

Petitioner next seeks permission from this Court to supplement his original habeas petition.  (Mot. to Suppl. Pet. for Writ of Habeas Corpus &/or Pet'r's Objs. 1, Doc. No. 42.)  Specifically, Petitioner alleges that he "has recently discovered impeachment evidence, which was unlawfully suppressed by the State, demonstrating that Detective Waeltz—the lead investigating police officer in Petitioner's case—was a defendant in a federal civil rights action for, inter alia, violations of Joseph Riddles's civil and constitutional rights."  (Mot. to Suppl. 1.)  According to Petitioner, the then-pending civil charges against the detective constituted Brady material that should have been disclosed to Petitioner at trial.  (See Mot. to Suppl. 3.)  Petitioner only "recently discovered" the evidence "through sheer luck."  (Mot. to Suppl. 3.)  Petitioner claims that he learned of the civil case on August 15, 2015.  (Mot. to Suppl. 3.)  He submitted his request to supplement on October 21, 2015.  (Pet'r's Suppl. Mem. of Law & Fact in Supp. of Newly-Discovered Brady Material 25, Doc. No. 42.)

The alleged "newly discovered evidence" was a civil complaint filed in 1996 by Joseph Riddle, who was at that time serving a prison sentence.  (Pl.'s Am. Compl ¶ 2, Ex. B. to Mot. to Suppl., Doc. No. 42-1.)  Among Riddle's allegations was a claim under 42 U.S.C. § 1983 that Detective Waeltz had used excessive force against Riddle.  (Pl.'s Am. Compl. ¶ 21.)  The matter was placed in civil suspense on February 2, 1998.  (Docket for Riddle v. Waeltz et al., No. 2:96-cv-06337-RBS (E.D. Pa.)).  Apart from a few procedural notations, the docket sheet clearly indicates that there was no activity in the Riddle action from February of 1998 through May of 2013.  (Docket for Riddle v. Waeltz et al., No. 2:96-cv-06337-RBS (E.D. Pa.)).  On May 24,

---

[13] Petitioner also filed a motion to amend his original petition in order to "reflect the change in respondents (or who is responsible for his unlawful detention), who is now Steven R. Glunt (the Superintendent at S.C.I. Rockview)." (Pet'r's Mot. to Amend Original Pet. for Writ of Habeas Corpus 1.)  The Court denies this motion as moot.

2013, the case was dismissed with prejudice due to the plaintiff's failure to prosecute. (Order, Riddle v. Waeltz et al., No. 2:96-cv-06337-RBS (E.D. Pa. May 24, 2013), Doc. No. 49.)

Rule 11 of the Rules Governing § 2254 Habeas Corpus Cases states that "the Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a [habeas] proceeding under these rules." R. Gov. § 2254 Cases in the U.S. District Courts 11. Thus Rule 15 of the Federal Rules of Civil Procedure, which governs amendment of pleadings, applies to habeas petitions, subject to the one-year limitation period under AEDPA. See United States v. Thomas, 221 F.3d 430, 435–36 (3d Cir. 2000). Rule 15(a) provides that a party may amend his pleading once as a matter of course within twenty-one days after serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a response pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Id. 15(a)(2). The Rule further provides that "[t]he court should freely give leave when justice so requires." Id.

Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). In the habeas context, a proposed amendment may be futile if the claim is meritless or if it is unexhausted and has been procedurally defaulted. See Belle v. Varner, No. 99-5667, 2001 WL 1021135, at *9 n.11 (E.D. Pa. Sept. 5, 2001).

The Court construes Petitioner's motion to supplement as an impermissible attempt by Petitioner to append an unexhausted claim to his habeas petition.[14]  Though Petitioner's direct appeal to the Superior Court included an allegation that the prosecution had violated Brady v. Maryland, the factual contents of that claim and of his proposed addition are dissimilar. Petitioner therefore did not "fairly present" his second Brady claim to the state courts.  See McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

Petitioner has also procedurally defaulted his second Brady claim.  In Pennsylvania, a claim is procedurally defaulted if "the state court refuses to hear the merits of the claim because either (1) the defendant waived a PCRA claim she could have raised in an earlier proceeding but failed to do so; or (2) some other procedural bar exists, such as a statute of limitations."  Lambert v. Blackwell, 134 F.3d 506, 518 (3d Cir. 1997).  Under Pennsylvania law, any PCRA petition, including second or subsequent petitions, must be filed within one year of the date that petitioner's sentence became final, unless the petitioner both alleges and proves that an exception to the time limitation applies.  42 Pa. Cons. Stat. § 9545(b)(1).  To meet the narrow exceptions to the time-bar, petitioner must demonstrate one of the following exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

---

[14] Petitioner captioned his motion as a request to supplement his petition "and/or" his objections to the Report and Recommendation.  (See Mot. to Suppl. 1.)  However, his motion clearly raises an entirely new allegation and in no way responds to the Report and Recommendation.  The Court denies Petitioner's request to supplement his objections to the magistrate judge's Report and Recommendation.

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

Id.  The provision further provides that a petition invoking one of these three exceptions "shall be filed within 60 days of the date the claim could have been presented."  Id. § 9545(b)(2).

Petitioner has not established that any of the three exceptions apply.  Though he states that he did not discover the alleged Brady material until August 2015, information about the case was readily available to Petitioner at the time of his trial—it was freely accessible to the public then, as it was in August of 2015.  See, e.g., Commonwealth v. Lopez, 51 A.3d 195, 196 (Pa. 2012) ("Information related to trial counsel's disciplinary issues was publicly available for years, including when appellant's first PCRA petition was being prepared.  As these facts were easily discoverable and in the public record for longer than 60 days before this petition was filed, this petition is time-barred . . . .").  Petitioner plausibly could have discovered the information if he had exercised due diligence.  As is clear from the plain language of the statute, neither of the other exceptions is relevant in the instant case.  Moreover, even if any of the exceptions applied, Petitioner did not file a petition invoking one of the exceptions within the sixty-day period provided under § 9545(b)(2).  Thus, Petitioner has procedurally defaulted his second Brady claim.

As discussed above, a reviewing court may not reach the merits of a claim that has been procedurally defaulted unless the petitioner establishes either "cause and prejudice" or a "fundamental miscarriage of justice."  See Lambert, 134 F.3d at 518.  Here, Petitioner has neither alleged nor established that either of these exceptions apply.  The Court therefore

declines to review the merits of Petitioner's procedurally defaulted claim.  Petitioner's motion to amend his habeas petition is denied.

But even if the Court were to reach the merits of Petitioner's claim, a cursory review of Petitioner's allegations suggests that Petitioner's proposed Brady claim is meritless.  To establish a violation under Brady v. Maryland, a defendant must show that "(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material."  Lambert v. Blackwell, 387 F.3d 210, 252 (2004).  Even assuming that an unrelated civil complaint filed in federal court was information that the state prosecutor should have known about and that was favorable to Petitioner's defense, Petitioner would be unable to establish Brady's third prong.  At the time of Petitioner's criminal trial, the Riddle action had been in civil suspense since February of 1998—a period of nearly thirteen years.  The Eastern District of Pennsylvania eventually dismissed the Riddle action due to the plaintiff's failure to prosecute.  Moreover, the civil action involved allegations almost entirely unrelated to the criminal action against Oke, apart from Detective Waeltz's involvement in both.  As a result, the civil complaint, even if disclosed, was of very little material value.  Thus Petitioner's theory that Riddle's complaint would somehow have allowed Petitioner to show that Detective Waeltz "ha[d] a motive to lie to: (1) not get sued again; (2) protect himself from not looking incompetent; and (3) protect himself from liability and secure a conviction so that he is not accused of coercing a false statement out of Mr. Schwarz (so that he can aid the State in obtaining a conviction and also satisfy his own personal agenda)" (Mot. to Suppl. 21) is unpersuasive.

5.   Petitioner's "motion to grant" his motion to supplement

Petitioner next requests that this Court grant his motion to supplement his habeas petition as unopposed pursuant to Local Rule of Civil Procedure 7.1(c) because Respondents have not filed a response in opposition to the motion.  (Pet'r's Mot. to Grant Pet'r's Mot. to Suppl. 1, Doc. No. 43.)  The Court denies Petitioner's request.  As stated above, Petitioner's motion to supplement his petition is meritless.  Neither Respondents' failure to respond to Petitioner's motion nor Local Rule 7.1(c) gives this Court the authority to grant a request that contravenes both state and federal law.

6.   Petitioner's motion for a certificate of appealability

A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  For claims addressed on the merits, a prisoner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  When claims are denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id.</u>  The Court concludes that reasonable jurists would not differ regarding the outcome of the issues presented in this petition.  Thus, no certificate of appealability will issue in this matter, and Petitioner's motion for a certificate of appealability is denied.

IV. Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1. The Report and Recommendation (Doc. No. 34) is APPROVED and ADOPTED as modified by this order.

2. The petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) is DISMISSED without an evidentiary hearing.

3. Petitioner's objections to the Report and Recommendation (Doc. No. 39) are OVERRULED in part.

4. Petitioner's motion to amend the original petition (Doc. No. 11) is DENIED.

5. Petitioner's motions for sanctions (Doc. Nos. 21 & 22) are DENIED.

6. Petitioner's motion for discovery and an evidentiary hearing (Doc. No. 29) is DENIED.

7. Petitioner's motion for judicial notice (Doc. No. 30) is GRANTED in part and DENIED in part.

8. Petitioner's motion to supplement the original petition or his objections to the Report and Recommendation (Doc. No. 42) is DENIED.

9. Petitioner's "motion to grant" the petitioner's motion to supplement the petition for writ of habeas corpus or his objections to the Report and Recommendation (Doc. No. 43) is DENIED.

10. Petitioner's request for a certificate of appealability (Doc. No. 41) is DENIED.

11. The Clerk of Court is directed to close this matter for statistical purposes.


BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

37